IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGEI V. KOROLEV, | No. C-05-4992 MMC |
| Petitioner, | **ORDER GRANTING RESPONDENT'S MOTION TO DISMISS FIRST AMENDED PETITION** |
| v. | |
| RICHARD KIRKLAND, | |
| Respondent | |

Before the Court is respondent's motion, filed December 14, 2007, to dismiss petitioner's First Amended Petition ("FAP"). Petitioner, through counsel, has filed opposition, to which respondent has replied. Having read and considered the papers filed in support of and in opposition to the motion,[1] the Court rules as follows.[2]

---

[1] After respondent filed his reply, petitioner filed a motion for leave to file supplemental opposition, for the stated purpose of responding to "two new arguments" in the reply. Respondent has not filed opposition to the motion for leave. Although the "two new arguments" are more properly characterized as responses to arguments made by petitioner in his opposition, rather than arguments made in the first instance, the Court will exercise its discretion to grant petitioner leave to file what is in essence a surreply. Accordingly, the "proposed" supplemental opposition attached to petitioner's motion for leave is deemed filed as of today's date, and the Court has considered such supplemental filing in connection with the instant motion to dismiss.

[2] By order filed April 30, 2008, the Court took the matter under submission.

**BACKGROUND**

Petitioner is a state prisoner currently incarcerated at Pelican Bay State Prison.

On August 23, 2000, a jury in Marin County Superior Court found petitioner guilty of one count of attempted murder, one count of dissuading a witness from making a police report, three counts of assault with a semiautomatic firearm, and one count of obstructing or resisting an officer; additionally, the jury found true an allegation that petitioner personally used a firearm. See People v. Korolev, 2003 WL 1901363, *4 (Cal. App. 2003). On March 16, 2001, the trial court sentenced petitioner to a term of life plus 35 years and 4 months in state prison, and one year in county jail. See id.

On April 18, 2003, the California Court of Appeal affirmed the conviction. See id. at *9. On July 9, 2003, the California Supreme Court denied petitioner's request for review of the California Court of Appeal's decision. (See FAP ¶ 43.) On October 7, 2004, petitioner filed with the California Supreme Court a petition for a writ of habeas corpus, (see FAP ¶ 44); on November 2, 2005, the California Supreme Court denied the petition, (see id.).

On December 2, 2005, petitioner filed the instant action; specifically, plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. By order filed November 28, 2006, the Court, upon motion by respondent, dismissed the initial petition, finding petitioner had not filed the petition within the applicable limitations period, and afforded petitioner leave to amend to allege a basis for equitable tolling of the statute of limitations. On August 13, 2007, petitioner filed the FAP.

**DISCUSSION**

Respondent argues petitioner has failed to allege a cognizable basis for equitable tolling and, consequently, the FAP should be dismissed.

By order filed November 28, 2006, the Court found the initial petition was not filed within the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). See 28 U.S.C. § 2244(d). The dates relevant to such finding are as follows:

(1)  the one-year statute of limitations began to run on October 7, 2003, 90 days

after the date the California Supreme Court denied petitioner's request for review of the California Court of Appeal's decision affirming the judgment, see Bowen v. Roe, 188 F. 3d 1157, 1159 (9th Cir. 1999) (holding California criminal judgment becomes final 90 days after entry of California Supreme Court's order denying review of decision affirming judgment);

(2) on October 7, 2004, the 365th day of the one-year period of limitations, petitioner filed a petition for a writ of habeas corpus in state court, thereby statutorily tolling the running of the last day left in the period of limitations, see 28 U.S.C. § 2244(d)(2) (providing "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations");

(3) the AEDPA period of limitations began to run again on November 2, 2005, the date the California Supreme Court denied petitioner's petition for a writ of habeas corpus, see Cal. Rules of Court, Rule 8.532(b)(2)(C) (providing Supreme Court's denial of petition "final on filing"),[3] and expired the next day, specifically, November 3, 2005, see Patterson v. Stewart, 251 F. 3d 1243, 1246-47 (9th Cir. 2001) (excluding from calculation of period of limitations date state court denies petition for writ of habeas corpus);[4] and

(4) petitioner filed his initial federal petition on December 2, 2005, 29 days after the AEDPA period of limitations had expired.

In light of the above, as the Court has previously found, the instant action is subject to dismissal, unless petitioner can establish his entitlement to equitable tolling.[5]

---

[3] In its order of November 28, 2006, the Court cited this rule as "Rule 29.4(b)(2)(C)." On January 1, 2007, Rule 29.4 was renumbered as Rule 8.532.

[4] In its order of November 28, 2006, the Court stated the period of limitations expired on November 2, 2005. As discussed above, however, the date of November 2, 2005 is properly excluded from the period of limitations, and, as a result, the limitations period expired on November 3, 2005.

[5] In his opposition to the instant motion, petitioner reiterates an argument made in his opposition to the initial motion to dismiss, specifically, that the Court should apply former Rule 24 of the California Rules of Court, which provided that the Supreme Court's denial of

"A litigant seeking equitable tolling of the one-year AEDPA limitations period bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Mendoza v. Carey, 449 F. 3d 1065, 1068 (9th Cir. 2006) (internal citation, quotation, and alterations omitted).

For example, a "combination of (1) a prison law library's lack of Spanish-language legal materials, and (2) a petitioner's inability to obtain translation assistance before the one-year deadline, could constitute extraordinary circumstances" as to a pro se Spanish-speaking prisoner with "limited" English skills, so long as the prisoner shows the "language barriers actually prevent[ed] timely filing" and he "exercised the requisite diligence in his search for Spanish-language materials or a willing translator." See id. at 1068-69, 1071. As another example, if a petitioner's "mental incompetence in fact cause[s] him to fail to meet the AEDPA filing deadline," the deadline "should be equitably tolled." See Laws v. Lamarque, 351 F. 3d 919, 923 (9th Cir. 2003) (holding allegation that, during period of limitations, pro se petitioner was "deprived of any kind of consciousness" because of mental impairment sufficient to "warrant further factual development" and avoid dismissal).

"The threshold necessary to trigger equitable tolling under the AEDPA is," however, "very high, lest the exceptions swallow the rule." Mendoza, 449 F. 3d at 1068 (internal citation, quotation, and alteration omitted).

Here, petitioner alleges he is "severely mentally ill," (see FAP ¶ 340), with "bipolar disorder and other debilitating mental illnesses," (see FAP ¶ 338), and that such mental impairments cause him to experience "rapid cycling," "severe depression," and "suicidal

---

a petition for a writ of habeas corpus became final 30 days after it was filed. See Bunney v. Mitchell, 262 F. 3d 973, 974 (9th Cir. 2001) (citing former Rule 24 as providing Supreme Court's denial of petition "not final for 30 days"). Rule 24, however, was repealed before petitioner filed his state petition, and, consequently, is inapplicable to him. Specifically, as of January 1, 2003, Rule 24 was replaced by Rule 29, later renumbered as Rule 8.532, which, as noted, provides the denial becomes final upon filing.

To the extent petitioner may implicitly be arguing he and/or his counsel relied on the former Rule 24 in filing his initial petition 29 days after the Supreme Court's denial of his petition for a writ of habeas corpus, such argument is unavailing, as such reliance is not grounds for equitable tolling. See Frye v. Hickman, 273 F. 3d 1144, 1146 (9th Cir. 2001) (holding "miscalculation of the limitations period" does "not constitute extraordinary circumstances sufficient to warrant equitable tolling").

4

ideation and tendencies," (see FAP ¶ 362), as well as "visual and aural hallucination," (see FAP ¶ 368). According to petitioner, during the period of limitations and at present, he has been in the "Enhanced Outpatient Program Level of Care," which is "reserved for inmate-patients who are unable to function or care for themselves in a regular general population setting, or who are acutely ill or decompensating." (See FAP ¶ 439.) Petitioner also alleges his mental impairments "prevented him from managing his affairs and understanding his legal rights and acting upon them, rendering him unable to prepare and file – and unable to competently assist counsel in preparing and filing – his habeas petition before the limitations period expired." (See FAP ¶ 377.)

Additionally, petitioner alleges that although he is "smart and accomplished," he "has never shown a great aptitude for English." (See FAP ¶ 425.) Petitioner also alleges he "cannot read or write English reliably without the aid of a Russian-English dictionary," (see FAP ¶ 426), the prison library does not have such a dictionary and his request for one was "refused," (see FAP ¶ 430). Petitioner further alleges he "can understand only about 25-30% of any legal document he receives, including letters and briefs," and that "[t]here is no one at the prison from whom he can solicit legal advice." (See id.)

In addition to the above, petitioner alleges he has "physical ailments" that "existed during the limitations period," specifically, "diabetes," "hypertension," "asthma," "sleep apnea," "gastro-intestinal disorder," "edema," "severe headaches," "back pain and sciatica," "ear, skin and foot problems," and "allergies." (See FAP ¶ 339.) Further, petitioner alleges he is "morbidly obese," (see id.), and has been given "the wrong prescription for corrective lenses" by his "eye doctor," (see FAP ¶ 428). According to petitioner, his physical ailments "interact[ed]" with his mental impairments and limited English skills to "render him unable to represent himself and unable to competently assist counsel or his family in his representation," (see FAP ¶ 340).

Respondent argues the above-described allegations are insufficient to support a claim of equitable tolling because petitioner cannot establish that such conditions caused petitioner to file the instant action 29 days after the statute of limitations expired. In

particular, respondent argues, because petitioner was represented by counsel, no causal connection exists between the late filing and petitioner's mental impairments, limited English skills, and physical ailments.

In his opposition, petitioner argues he was proceeding without counsel during the entire AEDPA limitations period, and, consequently, a connection exists. Specifically, petitioner argues, he was unable to complete and timely file a federal petition as a pro se litigant, because of the above-described mental impairments, limited English skills, and physical ailments. Petitioner's showing with respect to the asserted lack of representation is as follows:

(1) Beginning September 16, 2004, petitioner was represented by counsel for purposes of his state habeas petition, (see Corrected Rosenfeld Decl., filed July 14, 2006, ¶ 2);

(2) after counsel, on October 7, 2004, filed the state habeas petition, counsel realized that if said petition were denied, petitioner would have "very little time" to file a federal petition, and, consequently, counsel began preparing the federal petition,[6] although counsel had not yet signed a "representation agreement" with respect to the federal habeas proceeding, (see id. ¶ 4);

(3) upon denial of the state habeas petition, counsel sent the initial federal petition to petitioner, who "promptly signed" it and "caused it to be returned" to counsel, who, in turn, filed the petition in district court on behalf of petitioner, (see id. ¶¶ 5-6); as noted, the initial federal petition was filed on December 2, 2005; and

(4) on December 29, 2005, petitioner "hired" counsel to represent him in the instant action, (see id. ¶ 8).

Based upon the above-described circumstances, petitioner argues, he was proceeding without the assistance of counsel herein until December 29, 2005, a date after the initial petition had been filed on an untimely basis; he characterizes the steps taken by

---

[6] Petitioner does not indicate the specific date counsel undertook such effort.

6

1   counsel with respect to the initial federal petition as "informal" in nature.  (See Petitioner's
2   Opp. at 8:6.)  Petitioner's argument is not persuasive.  "When a lawyer prepares legal
3   documents on behalf of a prisoner and arranges for those documents to be signed and
4   filed, the prisoner is not proceeding without assistance of counsel."  Stillman v. LaMarque,
5   319 F. 3d 1199, 1201 (9th Cir. 2003).  Because these are the precise steps counsel took
6   on behalf of petitioner with respect to his federal petition, it necessarily follows that
7   petitioner was proceeding with the assistance of counsel.

8         Although proceeding with the assistance of counsel does not preclude a petitioner's
9   reliance on the doctrine of equitable tolling, such petitioner is required to allege the
10  existence of some "extraordinary circumstance" that prohibited counsel from timely filing
11  the petition.  See, e.g., id. (holding "extraordinary circumstances beyond [the petitioner's]
12  control existed when the prison litigation coordinator promised [the petitioner's] lawyer to
13  obtain [the petitioner's] signature in time for filing, but then broke his promise, causing the
14  filing to be late").

15        Here, petitioner has failed to sufficiently allege in the FAP the existence of any
16  extraordinary circumstance prohibiting counsel from obtaining petitioner's signature and
17  filing the initial petition before the AEDPA limitations period expired.  Rather, as noted,
18  petitioner alleges only that as a result of his mental impairments, limited English skills, and
19  physical ailments, he was "unable to competently assist counsel."  (See FAP ¶ 340.)
20  Petitioner fails to allege any instance in which his mental impairments, limited English skills,
21  and/or physical ailments had any bearing on his counsel's ability to prepare and file the
22  initial federal petition in a timely manner.  Indeed, the only step identified that petitioner
23  himself was required to take – signing the federal petition prepared by counsel and
24  returning it to counsel for filing – he admittedly completed "promptly."  (See Corrected
25  Rosenfeld Decl. ¶ 6.)  Further, the petition's conclusory allegation that he was "unable to
26  competently assist counsel," (see FAP ¶ 340), cannot be understood as an allegation that
27  petitioner could provide no assistance whatsoever, because petitioner admits in his
28  opposition that he "did provide input in connection with the habeas investigation and the

1  [p]etition." (See Petitioner's Opp. at 11:20-21.)

2  To the extent the FAP or petitioner's opposition may be premised on the theory that an extraordinary circumstance existed because petitioner was unable to meaningfully assist counsel in investigating the facts and/or identifying possible claims, petitioner cannot establish his entitlement to equitable tolling on such basis. In particular, because a district court may not grant a writ of habeas corpus unless the petitioner has exhausted the remedies available to him in state court, see 28 U.S.C. § 2254(b)(1)(A), a California prisoner can only allege in a federal habeas petition the federal claims he has already alleged in a pleading presented to the California Supreme Court, see Gatlin v. Madding, 189 F. 3d 882, 887-88 (9th Cir. 1999) (holding petitioner exhausts federal claim by "fairly present[ing]" claim to highest state court by making "reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief"). As discussed above, petitioner, through counsel, filed with the California Supreme Court a state habeas petition on October 7, 2004, and, earlier, had filed therewith a petition for review of the California Court of Appeal's affirmance of the conviction. As a result, counsel was aware, as of October 7, 2004, of the entire scope of possible claims petitioner could raise herein, specifically, the federal claims raised on direct appeal and the federal clams raised in the state habeas petition.

Finally, to determine, sua sponte, whether further amendment to include additional facts in a Second Amended Petition would be appropriate, the Court has considered the facts referenced by petitioner's counsel.[7] Specifically, counsel states that petitioner "periodically" is "mistrustful of those who are trying to help him," (see Corrected Rosenfeld Decl. ¶ 11), that, as a result of petitioner's limited English skills, counsel has experienced "frequent miscommunication" with petitioner, (see id. ¶ 12), and that, on one occasion in September 2004, prison officials took more than three weeks to deliver a letter from

---

[7] In opposition to the motion to dismiss the initial petition, counsel for petitioner offered a declaration as "further factual support" for petitioner's claim he was entitled to equitable tolling. (See Petitioner's Opp., filed July 14, 2006, at 7:21-28.)

1  counsel to petitioner, (see id. ¶ 18). Counsel does not state or even suggest, however, that
2  as a result thereof, counsel was unable to prepare a petition and cause it to be delivered to
3  petitioner for his review and signature during the period of time between October 7, 2004
4  and November 3, 2005, a period of approximately 390 days. Consequently, further leave to
5  amend to include such facts would be futile.
6      Accordingly, the Court finds petitioner has failed to allege a cognizable basis for
7  equitable tolling. Further, the Court finds further amendment would be futile.

## CONCLUSION

9      For the reasons stated, respondent's motion to dismiss the First Amended Petition is
10 hereby GRANTED, and the First Amended Petition is hereby DISMISSED without leave to
11 amend.
12 **IT IS SO ORDERED.**

14 Dated: May 12, 2008

MAXINE M. CHESNEY
United States District Judge